1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| SHENZHEN ZEHUIJIN INVESTMENT CENTER,<br><br>                                    Petitioner,<br><br>v.<br><br>LIU YINGKUI, et al.,<br><br>                                    Respondents. | Case No. 24-cv-372-MMA-DEB<br><br>**ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD; AND**<br><br>[Doc. No. 1]<br><br>**DENYING CROSS-MOTION TO DISMISS OR STAY**<br><br>[Doc. No. 12] |

11
12
13
14
15
16
17
18
19
20

On February 26, 2024, Shenzhen Zehuijin Investment Center ("Petitioner" or "SZIC") filed a Petition to confirm an arbitration award against Respondents Liu Yingkui ("Respondent Liu") and Zhang Xin ("Respondent Zhang"). Doc. No. 1 ("Pet."). On April 30, 2024, Respondent Zhang filed a response in opposition to the Petition. Doc. No. 9. On May 16, 2024, Respondent Liu filed a response in opposition to the Petition as well as a cross-motion to dismiss or stay the Petition. Doc. No. 12. Both the Petition and Respondent Liu's cross-motion are fully briefed. *See* Doc. Nos. 16, 20, 25.[1] The Court

21
22
23
24
25
26
27
28

---

[1] Respondent Zhang was granted leave to file a surreply. Doc. No. 24.

found these matters suitable for disposition on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  Doc. No. 13.  For the reasons set forth below, the Court **GRANTS** SZIC's Petition and **DENIES** Respondent Liu's cross-motion to dismiss or stay.

# I. INTRODUCTION

Petitioner SZIC asks the Court to confirm a foreign arbitration award issued on March 22, 2021, by the Beijing Arbitration Commission against Respondent Liu.  Except where otherwise noted, the facts contained in this background section are derived from the Petition and its attachments, including the March 22, 2021 award, Doc. No. 1-7,[2] and are not to be construed as factual findings by this Court.

## A.    Factual Background

In September 2017, SZIC entered into a one-year loan agreement with Respondent Liu and Sinowel Communication Technology Co., Ltd (the "Loan Agreement").  Pet. ¶¶ 11–12.  Pursuant to the Loan Agreement, SZIC was to loan Respondent Liu 160,000,000 Yuan, which was to be used to repurchase and release the VIE structure of Beijing Sinowel Communication Technology Co., Ltd. and Beijing Sinowel Asset Administration Co., Ltd. (collectively, the "Target Company") Pet. ¶ 11; Pet. Ex. D at 56.[3]

The Loan Agreement provides that any dispute between the parties was to be governed by the laws of China, and that if amicable negotiations fail, "any party shall have the right to file a lawsuit with Beijing Arbitration Commission, and the dispute shall be settled through arbitration in Beijing in accordance with the rules of Beijing Arbitration Commission."  Pet. ¶¶ 14–15; *see also* Pet. Ex. A at 20.

---

[2] The Court refers to all exhibits appended to the declarations submitted in this matter by the number or letter identified.  For example, the Court refers to Doc. No. 1-7 as "Petitioner's Exhibit D" or "Pet. Ex. D."

[3] Unless otherwise noted, all citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Also in 2017, two related agreements were executed.  First, SZIC, Respondent Liu, and the Target Company entered into a Cooperation Agreement.  Pet. ¶ 16.  The Cooperation Agreement provides that when SZIC loans Respondent Liu 160,000,000 Yuan under the Loan Agreement, "SZIC's creditor's rights could be converted into equities and that, after converting into equities, Respondent should transfer 13.79% of the Target Company to SZIC which, after transfer is final, should fully settle the principal and interest paid pursuant to the Loan Agreement."  *Id.*

Second, SZIC, the Target Company, and Ningbo Zhenrong entered into an Investment Agreement, pursuant to which Ningbo Zhenrong was to extend a loan of 120,000,000 Yuan to the Target Company for one year to be repaid at 8% interest only if the equity conversion of the Target Company failed.  *Id.* ¶ 17.  The parties to the Investment Agreement simultaneously drafted an Investment Memorandum, outlining the relevant investment returns and the fund relationship between SZIC and Respondent Liu. *Id.*

The funding under the Loan Agreement began on December 22, 2017, and was completed in four installments: two payments on December 22, 2017, in the amounts of 120,000,000 Yuan and 20,000,000 Yuan; 10,000,000 Yuan on April 17, 2018; and 10,000,000 Yuan on May 3, 2018.  Pet. ¶¶ 19, 21; Doc. No. 1-3 ¶ 10; Pet. Ex. D at 47. These payments were made "by SZIC individually and through third parties" including, as relevant here, Ningbo Zhenrong, "as outlined and planned for in the Loan Agreement." Pet. ¶ 20.

One year later, in December 2018, the loan matured, and Respondent Liu failed to repay the liabilities outlined in the Loan Agreement.  Pet. ¶¶ 11, 20; Pet. Ex. D at 47.

**B.    Arbitration History and Record**

On July 23, 2020, SZIC submitted an arbitration dispute to the Beijing Arbitration Commission ("BAC").  Pet. Ex. D at 46.  The arbitration hearing was held on November 12, 2020, before a tribunal of three arbitrators (the "Tribunal").  *Id.*  On March 22, 2021, the Tribunal found in SZIC's favor and awarded SZIC: 140,000,000 Yuan, the principal

pursuant to the Loan Agreement; 8% interest totalling 11,200,000 Yuan; liquidated damages at the rate of 5% per day from July 10, 2020 to the date of actual payment; lawyer's fees in the amount of 400,000 Yuan; and 80% of the arbitration fees, totalling 1,080,966.27 Yuan (the "Award"). *Id.* at 65.  The Tribunal ordered that Respondent Liu fully perform his obligations under the Award within 15 days of service of the Award. *Id.*

On May 8, 2021, an Enforcement Notice issued and was served on Respondent Liu, requiring a freeze and transfer of 152,680,966.27 Yuan.  Pet. ¶ 16.

On June 2, 2021, the Beijing Fourth Intermediate People's Court rejected Respondent Liu's application to revoke the Award.  Pet. ¶ 20; Pet. Ex. E at 19.

On August 16, 2021, the Beijing Second Intermediate People's Court rejected Respondent Liu's objection to the Enforcement Notice and request to unfreeze his assets on the grounds that he never received notice.  Pet. ¶ 33; Pet. Ex. F.  However, this court unfroze certain bank accounts "because the sale of [Respondent Liu's] stocks and other freezing measures satisfied the debts he owed to SZIC such that additional asset freezes were unnecessary." *Id.*

On September 9, 2021, the Beijing Second Intermediate People's Court rejected Respondent Liu's application for non-enforcement of the Award.  Pet. ¶ 34; Pet. Ex. G at 19.

On November 2, 2022, SZIC's application to enforce the Award in Singapore pursuant to § 29(l) of the International Arbitration Act of 1994 was granted by the Assistant Registrar for the General Division of the High Court of the Republic of Singapore.  Pet. ¶ 36; Pet. Ex. I at 2.

On November 15, 2022, the Fourth Branch of the Beijing Municipal People's Procuratorate denied Respondent Liu's petition for supervision of the Beijing Fourth Intermediate People's Court decision.  Pet. ¶ 35; Pet. Ex. H at 5.

On February 20, 2023, Respondent Liu's application to set aside the enforcement order in Singapore was denied.  Pet. ¶¶ 37–38; Pet. Ex. J.

On March 3, 2023, the High Court of the Republic of Singapore issued a judgment in SZIC's favor and ordered Respondent Liu to pay all sums due.  Pet. ¶ 39; Pet. Ex. K.

On April 5, 2023, the High Court of the Republic of Singapore denied Respondent Liu's appeal.  Pet. ¶ 40; Pet. Ex. L.

## II. LEGAL STANDARD

Confirmation of an arbitration award "is a summary proceeding that converts a final arbitration award into a judgment of the court."  *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc*. ("*Cubic Def.*"), 665 F.3d 1091, 1094 n.1 (9th Cir. 2011).  Once an award is confirmed, it has the same force and effect as a judgment in a civil action and may be enforced by any means available to enforce civil judgments.  *Id.*  The burden of proof in a proceeding to confirm an arbitration award is on the party defending against enforcement.  *See Empresa Constructora Contex Limitada v. Iseki*, 106 F.Supp.2d 1020, 1024 (S.D. Cal. 2000) (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2nd Cir. 1974)).

"Confirmation of foreign arbitration awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, known as the New York Convention, and federal law implementing the Convention, 9 U.S.C. §§ 201–208."  *Cubic Def.*, 665 F.3d at 1095.  After the United States entered into the New York Convention, Congress enacted Chapter Two of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201–208, "to provide for the effective and efficient resolution of international arbitral disputes."  *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1133 (9th Cir. 2022).  The New York Convention is intended "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries."  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1120 (9th Cir. 2002) (citations omitted).

Within three years after an award falling under the New York Convention is made, "any party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. "Under the Convention, [a] district court's role in reviewing a foreign arbitral award is strictly limited." *Changzhou AMEC E. Tools & Equip. Co., Ltd. V. E. Tools & Equip., Inc.*, No. EDCV 11-00354, 2012 U.S. Dist. LEXIS 106967, 2012 WL 3106620, at *14 (C.D. Cal. 2012) (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir.1997) (internal quotation marks omitted)); *see also Shanghai Lan Cai Asset Mgmt. Co. v. Yueting*, No. CV 18-10255 SJO (MRWx), 2019 U.S. Dist. LEXIS 217634, at *7 (C.D. Cal. Mar. 26, 2019). "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified" in the Convention. 9 U.S.C. § 207. The defenses are construed narrowly and the party opposing recognition or enforcement bears the burden of establishing that a defense applies. *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010). "The Convention and its implementing legislation have a pro-enforcement bias, a policy long-recognized by the Supreme Court." *Glencore Grain*, 284 F.3d at 1120. Thus, the burden on the party seeking to avoid enforcement of an award "is substantial." *Polimaster*, 623 F.3d at 836 (internal citation omitted).

### III. EVIDENTIARY OBJECTIONS

As a preliminary matter, the parties have filed numerous evidentiary objections to the various declarations submitted in this matter. *See* Doc. Nos. 9-2, 12-4, 17, 21, 27. It is not entirely clear how the Federal Rules of Evidence factor into this proceeding. The FAA provides that all applications related to arbitration awards "shall be made and heard in the manner provided by law for the making and hearing of motions, . . . ." 9 U.S.C. § 6. This includes petitions to compel arbitration, *id.* § 4, and petitions to confirm, modify, or vacate an award, *id.* §§ 9–12. The same applies for petitions to compel, *id.* § 206, and confirm, *id.* § 207, foreign arbitration awards falling under the New York Convention, *id.* § 208 (providing that Chapter 1, 9 U.S.C. §§ 1–16, applies to foreign

arbitration proceedings brought under Chapter 2).  The Supreme Court has noted that "[a] directive to a federal court to treat arbitration applications 'in the manner provided by law' for all other motions is simply a command to apply the usual federal procedural rules. . . ."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (quoting 9 U.S.C. § 6); *see also* Fed. R. Civ. P. 81(a)(6)(B) (providing that the Federal Rules of Civil Procedure apply in proceedings "relating to arbitration" brought under Title 9 of the United States Code).

When faced with a petition or motion brought pursuant to the FAA, many courts apply a standard similar to the summary judgment standard under Rule 56.  *Thompson v. La Petite Acad., Inc.*, No. 2:22-cv-04348-AB-JPR, 2023 U.S. Dist. LEXIS 115329, at *8 (C.D. Cal. Apr. 28, 2023) (quoting *Alvarez v. T-Mobile USA, Inc.*, 2011 U.S. Dist. LEXIS 146757, 2011 WL 6702424 at * 3 (E.D. Cal. Dec. 21, 2011)).  Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (explaining that at summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial"); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial.").  As a result, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez—Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)).  Consequently, courts have recognized that evidentiary objections on grounds such as speculation, hearsay, and lack of authentication are inappropriate "where it is apparent that the evidence is capable of being reduced to admissible evidence at trial."  *Thompson*, 2023 U.S. Dist. LEXIS 115329, at *8 (quoting *Alvarez*, 2011 U.S. Dist. LEXIS 146757, at *10 (itself quoting *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011))).  With this in mind, the Court turns to each set of objections.

**A.      Respondents' Objections to Petition Declaration**

To begin, Respondents Zhang and Liu object to several paragraphs in Pu Gang's declaration, Doc. No. 1-3 ("Gang Decl."), which Petitioner submitted in support of the Petition.  *See* Doc. No. 9-1; Doc. No. 12-4.  Petitioner filed a response to Respondent Liu's objections.  Doc. No. 18.

Respondent Liu objects to the entire declaration in a footnote, asserting that it is unduly prejudicial and confusing and therefore subject to exclusion pursuant to Federal Rule of Evidence 403.  Doc. No. 12-4 at 1 fn.1.  The Court **OVERRULES** this objection.  Pu Gang's declaration is not, as a whole, unduly prejudicial or confusing.  And Respondent Liu's position that he was denied due process in the underlying arbitration has no bearing on the admissibility of this declaration.

The Court **OVERRULES** the objections to ¶ 2.  Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the terms of the Loan Agreement.  Fed. R. Evid. 602.  His testimony as to the terms of the Loan Agreement does not contain any legal conclusions, Fed. R. Evid. 703, nor does this paragraph contain testimony on an "ultimate issue," or is otherwise subject to exclusion under Federal Rule of Evidence 704.

The Court **OVERRULES** the objections to ¶ 3.  This paragraph does not contain any legal conclusions.  Moreover, Pu Gang makes this statement based on his personal knowledge of these facts.  Fed. R. Evid. 701.  Further, Pu Gang does not attempt to lay foundation for any evidence by way of this paragraph.  Fed. R. Evid. 901.

The Court **SUSTAINS IN PART** the objections to ¶ 4.  This paragraph does not contain any legal conclusions.  However, to the extent Pu Gang speaks to the content and terms of the Loan Agreement and Cooperation Agreement, his testimony is barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **SUSTAINS IN PART** the objections to ¶ 6.  Federal Rule of Evidence 611(a) has no apparent applicability here.  This paragraph is not argumentative.  Fed. R. Evid. 403.  Pu Gang does not attempt to lay foundation for any evidence by way of this

paragraph.  Fed. R. Evid. 901.  And Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending and agreements.  Fed. R. Evid. 602.  Further, his testimony as to these events is not a legal conclusion, Fed. R. Evid. 703, nor is this impermissible testimony on an "ultimate issue," Fed. R. Evid. 704.  However, to the extent Pu Gang speaks to the content and terms of the Loan Agreement and Investment Agreement and Memorandum, his testimony is barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 8.  Federal Rule of Evidence 611(a) has no apparent applicability here and this paragraph is not argumentative.  Fed. R. Evid. 403.  Further, Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending under the Loan Agreement. Fed. R. Evid. 602.  And his testimony as to these events does not contain any legal conclusions, Fed. R. Evid. 703, nor is it impermissible testimony on an "ultimate issue," Fed. R. Evid. 704.

The Court **SUSTAINS** the objections to ¶ 9.  The best evidence rule prohibits Pu Gang from testifying to the content and terms of the Loan Agreement.  Fed. R. Evid. 1002.

The Court **SUSTAINS IN PART** the objections to ¶ 10.  Federal Rule of Evidence 611(a) has no apparent applicability here.  This paragraph is not argumentative.  Fed. R. Evid. 403.  Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending under the Loan Agreement.  Fed. R. Evid. 602.  His testimony as to these events is not a legal conclusion, Fed. R. Evid. 703, nor is this an "ultimate issue," Fed. R. Evid. 704.  However, to the extent Pu Gang offers testimony as to the content of the Loan Agreement, Cooperation Agreement, and Investment Agreement and Memorandum, his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 11.  The Court finds that this paragraph is not unduly prejudicial, confusing, or argumentative, and that it contains no

legal conclusions.  Fed. R. Evid. 403.  Additionally, Federal Rule of Evidence 611(a) has no apparent applicability here.

The Court **SUSTAINS** the objections to ¶¶ 13, 14, and 16.  The content of the documents in the underlying arbitration record, including the Award and the Enforcement Notice, are subject to the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 17.  The Court finds that this paragraph is not unduly prejudicial, confusing, or argumentative.  Fed. R. Evid. 403.  Additionally, Federal Rule of Evidence 611(a) has no apparent applicability here.  Finally, this paragraph contains no legal conclusions.  Fed. R. Evid. 703.

The Court **OVERRULES** the objections to ¶ 18.  This paragraph is not argumentative or subject to exclusion under Federal Rules of Evidence 403 or 611(a).

The Court **OVERRULES** the objections to ¶ 19.  This paragraph is not argumentative or unduly prejudicial, and it contains no legal conclusions.  Fed. R. Evid. 403.  Further, Federal Rule of Evidence 611(a) has no apparent applicability here.

The Court **SUSTAINS IN PART** the objections to ¶¶ 20, 22, 24, 30.  These paragraphs are not argumentative, nor do they contain any legal conclusions.  Fed. R. Evid. 403.  Moreover, Pu Gang has sufficient personal knowledge of the underlying events, including the history of the arbitration.  Fed. R. Evid. 602.  However, to the extent Pu Gang seeks to testify to the content of the documents in the arbitration record, his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

**B.    Petitioner's Objections to Opposition and Cross-Motion Declarations**

Next, Petitioner objects to the four declarations Respondent Liu offers in support of his opposition and cross-motion.  Doc. No. 17.  Respondent Liu filed a response in opposition to these objections.  Doc. No. 22.

### 1.    *Ding Declaration*

Petitioner objects to paragraphs in Ding Zhexuan's declaration.  Doc. No. 12-1 ("Ding Decl.").  Ding Zhexuan was the legal director of the Target Company from December 2015 to October 2020.  Ding Decl. ¶ 4.

1    The Court **OVERRULES** the objections to ¶¶ 6 and 8.  Out-of-court statements

2    made by a representative of the opposing party are not hearsay.  Fed. R. Evid.

3    801(d)(2)(A).

4    The Court **SUSTAINS** the objection to ¶ 9.  The Court finds that this paragraph—

5    wherein Ding Zhexuan recounts a phone conversation with Arbitrator Zhan Hui—

6    contains hearsay and does not fall within the residual exception to hearsay.  Fed. R. Evid.

7    807.  Respondent Liu explains that Ding Zhexuan was Respondent Liu's arbitration

8    attorney and is an officer of the court and therefore that his statements carry a sufficient

9    guarantee of trustworthiness.  Doc. No. 11 at 2–3.  But Ding Zhexuan does not declare

10   that he was Respondent Liu's arbitration attorney or that he is an officer of the court.[4]

11   Further, these out-of-court statements were not made during other judicial or quasi-

12   judicial proceedings.  Accordingly, Respondent Liu fails to offer sufficient guarantees of

13   trustworthiness on this basis.  Fed. R. Evid. 807(a)(1).  Even assuming Respondent Liu

14   offered sufficient guarantees of trustworthiness, he fails to explain how this evidence is

15   more probative than any other evidence that he could obtain through reasonable efforts.

16   Fed. R. Evid. 807(a)(2).  And it is not clear to the Court that this evidence could

17   nevertheless be reduced to admissible form at trial.

18   The Court **OVERRULES** the objections to ¶ 10.  Ding Zhexuan makes his

19   declaration on personal knowledge and as a percipient witness.  Fed. R. Evid. 602, 901.

20   ### 2.   *Zimmerman Declaration*

21   Petitioner objects to paragraphs in James M. Zimmerman's declaration.  Doc.

22   No. 12-2 ("Zimmerman Decl.").  Mr. Zimmerman is an attorney licensed to practice in

23   California and is a registered Foreign Lawyer with the "Beijing Justice Bureau/Chinese

24   Ministry of Justice."  Zimmerman Decl. ¶ 1.

---

[4] The Court acknowledges that "Ding Zhexuan, legal manager of Beijing Best Wealth Investment & Administration Co., Ltd." appears listed as one of seven attorneys for Respondent Liu at the top of the Award.  Pet. Ex. D at 45.  But Ding Zhexuan does not declare that he is an attorney, officer of the court, or that he represented Respondent Liu during the arbitration.

The Court **OVERRULES** all of the objections to Mr. Zimmerman's declaration.
Respondent Liu offers Mr. Zimmerman as an expert on the issue of arbitrations in China.
Although he is not licensed to practice law in China, the Court finds this fact alone is not
dispositive because he offers sufficient foundation for his knowledge, including his
experience with Chinese arbitrations, *id.* ¶ 3, which the Court lacks.  Fed. R. Evid. 702.

### 3.    Xie Declaration

Petitioner next objects to the declaration of Minmin Xie.  Doc. No. 12-3 ("Xie
Decl.").  Minmin Xie is an attorney licensed to practice law in China.  Xie Decl. ¶ 1.  The
Court similarly **OVERRULES** all of the objections to Minmin Xie's declaration.
Minmin Xie is a Chinese attorney and has specialized knowledge of and experience with
China's evidentiary laws, which the Court lacks.  Fed. R. Evid. 702.

### 4.    Liu Declaration

Finally, Petitioner objects to paragraphs contained in Respondent Liu's declaration.
Doc. No. 12-5 ("Liu Decl.").

The Court **OVERRULES** the objections to ¶ 9.  Respondent Liu may testify to his
understanding of the purpose of the Loan Agreement, and the Court finds that these
paragraphs do not contain any legal conclusions or improper speculation.  Fed. R. Evid.
701, 1002.

The Court **SUSTAINS** the objections to ¶ 10.  The Court finds that this statement
contains improper legal conclusions and is barred by the best evidence rule.  Fed. R.
Evid. 701, 1002.

The Court **SUSTAINS IN PART** the objections to ¶¶ 12, 13, 15–18, 20–22, and
24.  These statements do not contain legal conclusions or improper speculation.  Fed. R.
Evid. 701.  However, to the extent Respondent Liu seeks to testify to the content of the
Cooperation Agreement, Investment Agreement, Memorandum, or Letter of Cooperation,
his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **SUSTAINS IN PART** the objections to ¶ 27.  Respondent Liu may
testify as a percipient witness.  Fed. R. Evid. 602.  However, pursuant to the best

evidence rule, an audio or video recording or transcript is required to prove what took place at the arbitration hearing.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 32.  Respondent Liu can offer his opinion in this respect as it is neither a legal conclusion, improper speculation, nor prohibited by the best evidence rule.  Fed. R. Evid. 701, 1002.

The Court **SUSTAINS** the objections to ¶ 35.  For the same reasons discussed above, the Court finds that this statement also does not fall within the residual exception to hearsay.  Fed. R. Evid. 807.  Ding Zhexuan never states that he was Respondent Liu's arbitration attorney or that he is an officer of the court.  Further, these out-of-court statements were not made during other judicial or quasi-judicial proceedings.  Accordingly, Respondent Liu fails to offer sufficient guarantees of trustworthiness on this basis.  Fed. R. Evid. 807(a)(1).  Further, even assuming Respondent Liu offered sufficient guarantee of trustworthiness, he fails to explain how this evidence is more probative than any other evidence that he could obtain through reasonable efforts.  Fed. R. Evid. 807(a)(2).

Moreover, even if the Court finds that the statements made to Ding Zhexuan statement were subject to the residual hearsay exception, Respondent Liu's statement appears to contain hearsay within hearsay, and he offers no other exception or exclusion.  Fed. R. Evid. 805.  Finally, it is not clear to the Court that this evidence could nevertheless be reduced to admissible form at trial.

The Court **SUSTAINS IN PART** the objections to ¶¶ 36 and 39.  The Court finds that these paragraphs do not contain any legal conclusions or improper speculation.  Fed. R. Evid. 701.  However, to the extent Respondent Liu seeks to testify to the content of the Arbitration Award, his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

## C. Respondents' Objections to Petition Reply Declarations

Respondents Zhang and Liu have also lodged objections to the declarations Petitioner submits in support of its opposition to Respondent Liu's cross-motion and

1  reply in support of its Petition.  Doc. No. 21.  Petitioner filed a response in opposition to

2  these objections.  Doc. No. 28.

3      ***1.      Gang Declaration***

4      Petitioner offers a second declaration from Pu Gang in support of its omnibus

5  opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc.

6  No. 16-1 ("Gang Opp. Decl.").

7      The Court **OVERRULES** the objections to ¶ 3.  This statement is not barred by

8  the best evidence rule because Pu Gang is not testifying to the content of the Investment

9  Agreement and Memorandum.  Fed. R. Evid. 1002.  Nor is this statement unduly

10  prejudicial or confusing.  Fed. R. Evid. 403.

11      The Court **OVERRULES** the objections to ¶¶ 5, 6, and 7.  Pu Gang is an

12  Executive Partner of SZIC and therefore has sufficient personal knowledge of the

13  underlying events, including the transfer of funds under the Loan Agreement and Ningbo

14  Zhenrong's involvement.  Fed. R. Evid. 602.  His testimony as to the terms of the Loan

15  Agreement does not contain any legal conclusions, Fed. R. Evid. 703, nor does he testify

16  to an "ultimate issue," Fed. R. Evid. 704.  And because Pu Gang does not seek to lay the

17  foundation of any item of evidence through these paragraphs, Respondents' lack of

18  foundation objections are without merit.  Fed. R. Evid. 901.

19      The Court **OVERRULES** the objections to ¶ 9.  Declarant Pu Gang is an

20  Executive Partner of SZIC and therefore has sufficient personal knowledge of the

21  underlying events, including the arbitration proceedings.  Fed. R. Evid. 602.  His

22  statements do not contain any legal conclusions, Fed. R. Evid. 703, nor do these

23  statements bear on an "ultimate issue," Fed. R. Evid. 704.  Because Pu Gang does not

24  seek to lay the foundation of any item of evidence through these paragraphs,

25  Respondents' lack of foundation objections are without merit.  Fed. R. Evid. 901.

26  Finally, this paragraph does not contain any out-of-court statements.  Fed. R. Evid. 802.

27      The Court **OVERRULES** the objections to ¶ 10.  This paragraph does not contain

28  any legal conclusions or hearsay.  Fed. R. Evid. 602, 802.  Moreover, Pu Gang makes this

statement based on his personal knowledge of these facts, and he does not seek to lay the foundation for any item of evidence.  Fed. R. Evid. 701, 901.

The Court **OVERRULES** the objections to ¶¶ 11–13.  Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the arbitration proceedings and Petitioner's collection efforts, Respondent Liu's involvement with the Target Company, and the Chinese litigation the parties are currently involved in.  Fed. R. Evid. 602.  His statements do not contain any legal conclusions, Fed. R. Evid. 703, nor do these statements bear on an "ultimate issue," Fed. R. Evid. 704.  Further, because Pu Gang does not seek to lay the foundation for any item of evidence through these paragraphs, Respondents' lack of foundation objections are without merit.  Fed. R. Evid. 901.  Finally, this paragraph does not contain any out-of-court statements.  Fed. R. Evid. 802.

### 2.    *Jian Declaration*

Petitioner also offers a declaration from Zhang Jian in support of its omnibus opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc. No. 16-2 ("Jian Decl.").

The Court **OVERRULES** the objections to ¶ 2.  The Court finds that this paragraph is not subject to the best evidence rule, Fed. R. Evid. 1002, nor is it unduly prejudicial or confusing, Fed. R. Evid. 403.

The Court **OVERRULES** the objections to ¶ 4–6.  Zhang Jian makes his declaration on personal knowledge, and these paragraphs contain no legal conclusions or improper speculation.  Fed. R. Evid. 602.  Additionally, Zhang Jian is not offering expert testimony, Fed. R. Evid. 703, and because he does not seek to offer or authenticate any evidence, the lack of foundation objections are without merit.  Fed. R. Evid. 901.

### 3.    *Ho Declaration*

Finally, Petitioner offers a declaration from Yi-Chin Ho in support of its omnibus opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc. No. 16-3 ("Ho Decl.").  Yi Chin-Ho is an attorney representing Petitioner in this matter.

Ho Decl. ¶ 1.  Attorney Ho offers a declaration and seeks to lay the foundation for two exhibits.  Ho Decl. ¶¶ 3–4.

Respondents Zhang and Liu object to paragraphs 3 and 4 on relevance grounds. Fed. R. Evid. 401.  The Court **OVERRULES** the objections.  The Court finds that the two exhibits are relevant—they are two Chinese court rulings and are part of the arbitration record and procedural history of this matter.

**D.   Petitioner's Objections to Cross-Motion Reply Declarations**

Lastly, Petitioner has filed objections to the declarations Respondent Liu submits with his reply in support of his cross-motion.  Doc. No. 27.  Respondent Liu filed a response in opposition to these objections.  Doc. No. 29.

### 1.   *Liu Declaration*

Respondent Liu submits a second declaration with his reply in support of his cross-motion to dismiss or stay.  Doc. No. 20-1 ("Liu Reply Decl.").

The Court **OVERRULES** the objections to ¶ 6.  This paragraph does not contain any legal conclusions.  Fed. R. Evid. 701.

The Court **OVERRULES** the objections to ¶ 10.  Respondent Liu makes his declaration on personal knowledge and this statement contains no legal conclusions or improper speculation.  Fed. R. Evid. 602.  Additionally, Respondent Liu does not seek to authenticate any evidence.  Fed. R. Evid. 901.

The Court **OVERRULES** the objections to ¶ 12.  This paragraph does not contain any legal conclusions.  Fed. R. Evid. 701.

### 2.   *Xie Declaration*

Respondent Liu offers a second declaration from Minmin Xie in support of his reply.  Doc. No. 20-2 ("Xie Reply Decl.").

The Court **OVERRULES** the objections to ¶ 5.  Minmin Xie is a Chinese attorney and has specialized experience with Chinese litigation, which the Court lacks.  Fed. R. Evid. 702.  He offers proper expert testimony, and his declaration does not contain improper legal conclusions or speculation.

The Court **SUSTAINS IN PART** the objections to ¶ 6.  Minmin Xie's statements are within the realm of proper expert testimony, and this paragraph does not contain legal conclusions or improper speculation.  Fed. R. Evid. 702.  However, to the extent Minmin Xie seeks to offer testimony as to the contents of the "Regulatory Opinions of the Beijing Higher People's Court on Requirements for Materials to File Civil Cases," his statements are subject to exclusion under the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 7.  Minmin Xie offers proper expert testimony, and this paragraph does not contain legal conclusions or improper speculation.  Fed. R. Evid. 702.  Further, this paragraph is not unduly prejudicial or confusing.  Fed. R. Evid. 403.

### 3. *Zhang Declaration*

Respondent Liu offers a declaration from Respondent Zhang in support of his reply.  Doc. No. 20-3 ("Zhang Reply Decl.").  The Court **OVERRULES** Petitioner's objections to ¶¶ 4–6.  Respondent Zhang makes her declaration based on her personal knowledge.  These paragraphs do not contain any legal conclusions or improper speculation, and because Respondent Zhang does not seek to lay the foundation for any evidence, Petitioner's lack of foundation objection is without merit.  Fed. R. Evid. 901.

## IV. DISCUSSION

In accordance with the New York Convention, Petitioner asks the Court to confirm the Award.  Doc. No. 1.  Respondents argue that the Court should deny the Petition on various grounds.  Doc. Nos. 9, 12.  Additionally, Respondent Liu moves to dismiss the Petition for lack of personal jurisdiction, *forum non conveniens*, and for failure to join an indispensable party.  Alternatively, Respondent Liu moves to stay this action pending resolution of litigation in China.  Doc. No. 12.  Because Respondent Liu challenges the Court's personal jurisdiction over him, the Court first addresses his cross-motion.

### A. Cross-Motion to Dismiss

As noted, Respondent Liu asks the Court to dismiss the Petition for lack of personal jurisdiction, *forum non conveniens*, and failure to join an indispensable party.

Doc. No. 12 at 14–22.  The Court addresses each of these arguments in turn.

### 1. *Personal Jurisdiction*

Courts reviewing petitions to confirm arbitration awards, including those falling under the New York Convention, are obligated to find personal jurisdiction before enforcing an award. *Glencore Grain*, 284 F.3d at 1121 ("We hold that neither the Convention nor its implementing legislation removed the district courts' obligation to find jurisdiction over the defendant in suits to confirm arbitration awards."). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011).

In support of the Court's jurisdiction over Respondents, Petitioner alleges that Respondents are residents of San Diego County, California, but acknowledges that their primary residence is in Beijing.  Pet. ¶ 5.

Respondent Liu argues that the Court lacks specific and general personal jurisdiction over him.  First, he asserts that there is no general personal jurisdiction because he is not "at home" here.  Doc. No. 12 at 14 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).  According to Respondent Liu, although he is physically present within the District now, he does not intend to remain here indefinitely.  Liu Decl. ¶ 4.

A natural person is considered "at home" for general personal jurisdiction purposes where he or she is domiciled. *Daimler*, 571 U.S. at 137; *see also Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). An individual's domicile is determined by several factors, including: current residence, location of personal and real property, location of bank accounts, location of spouse and

1   family, and driver's license and automobile registration. *Lew v. Moss*, 797 F.2d 747, 750

2   (9th Cir. 1986).

3        Second, Respondent Liu asserts that there is no specific personal jurisdiction over

4   him because the minimum contacts test is not satisfied. Doc. No. 12 at 15 (citing *Mavrix*

5   *Photo*, 647 F.3d at 1227–28). Under California law, whether the Court may exercise

6   specific personal jurisdiction over a non-resident defendant depends on the following

7   three-prong test:

8

9        (1) The non-resident defendant must purposefully direct his activities or
         consummate some transaction with the forum or resident thereof; or perform

10       some act by which he purposefully avails himself of the privilege of
         conducting activities in the forum, thereby invoking the benefits and

11       protections of its laws; (2) the claim must be one which arises out of or relates

12       to the defendant's forum-related activities; and (3) the exercise of jurisdiction
         must comport with fair play and substantial justice, i.e. it must be reasonable.

13

14   *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.

15   1987)). The party asserting the court's personal jurisdiction bears the burden of

16   satisfying the first two prongs. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

17   Once satisfied, the burden then shifts to the party disputing jurisdiction to set forth a

18   "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King*

19   *Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

20        Respondent Liu's arguments and discussion of these two personal jurisdiction tests

21   relies on the faulty premise that he is an "out-of-state defendant." *Martinez v. Aero*

22   *Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). He is not. Critically, Respondent Liu

23   does not factually dispute that he is presently residing in this District.

24        "Among the most firmly established principles of personal jurisdiction in

25   American tradition is that the courts of a State have jurisdiction over nonresidents who

26   are physically present in the State." *Burnham v. Superior Court of Cal.*, 495 U.S. 604,

27   610 (1990). Pursuant to this principle, courts recognize what is often called "tag" or

28   "transient" jurisdiction—the jurisdictional theory that service upon a person physically

present in a forum, even if only temporarily and engaged in activity unrelated to the litigation, suffices to confer jurisdiction. *Bourassa v. Desrochers*, 938 F.2d 1056, 1058 (9th Cir. 1991) (quoting *Burnham*, 495 U.S. at 632 (Brennan, J., concurring)); *see also Ridgway v. Phillips*, 383 F. Supp. 3d 938, 945 (N.D. Cal. 2019) (quoting *Martinez*, 764 F.3d at 1067). In other words, it is well-settled that a court may, consistent with the Due Process Clause, exercise personal jurisdiction over a defendant who was physically present within the state when they were served. *Martinez*, 764 F.3d at 1067 (explaining that in *Burnham*, the Supreme Court "reaffirmed th[is] historical rule" after *International Shoe*); *Bourassa*, 938 F.2d at 1058 ("In *Burnham*, the Supreme Court recently affirmed the constitutional validity of transient jurisdiction.")

Here, Respondent Liu admits he is presently in California. Liu Decl. ¶ 4. And he does not dispute that he has been living at the Rancho Santa Fe address where the Petition was served, Doc. No. 3, or that he has continuously lived there since April 2022, Gang Opp. Decl. ¶ 10.

In reply, Respondent Liu argues that he was not personally served with the Petition. Doc. No. 20 at 3–4. To the extent Respondent Liu challenges the sufficiency of service of the Petition here, generally, the Court notes that it can disregard this argument as it was inappropriately raised in his reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *see also FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.") (collecting cases); *see also* Fed. R. Civ. P. 12(h)(1) (providing that challenges to service are waived if not properly raised). Relatedly, Respondent Liu's declaration submitted in reply contains almost entirely new evidence on this issue, *see* Liu Reply Decl., which was similarly inappropriate, *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Nevertheless, to the extent Respondent Liu challenges the Court's personal jurisdiction over him based upon a lack of proper or personal service, the Court reaches this argument.

Respondent Liu was not personally served.[5]  Doc. No. 3.  He was served with the Petition by mail.  Fed. R. Civ. P. 5(b)(2)(C).  In compliance with Rule 5, Petitioner mailed a copy of the Petition and its attachments to the Rancho Santa Fe address.  Doc. No. 3 at 6.  Respondent Liu does not dispute that this is the location where he resides nor does he argue that this is not his current or last known address.  Alternatively, assuming Rule 4 applies, Respondent Liu was duly served by delivery to his residence.  Fed. R. Civ. P. 4(e)(1)–(2).  Rule 4 is to be liberally construed here as Respondent Liu does not dispute that he received actual notice of this action.  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.") (internal quotation marks and citation omitted).  Petitioner attempted personal service twice, left the Petition at the Rancho Santa Fe property with an adult who represented themselves to be a co-tenant, Doc. No. 3 at 3, and mailed the Petition to this same address thereafter.  The Court finds on this record that Petitioner substantially complied with Rules 4(e)(1) and (2).[6]

---

[5] In challenging this Court's personal jurisdiction over him, Respondent Liu primarily argues that he was not personally served with the Petition.  Doc. No. 12 at 3–4.  Respondent Liu alternatively contends that service did not comply with California Code of Civil Procedure § 415.20.  *Id.* at 4.  Federal Rule of Civil Procedure 4, which governs service of a summons and complaint, allows for the application of California's service of process rules in federal court.  Fed. R. Civ. P. 4(e)(1).  Thus, Respondent Liu has apparently taken the position that Rule 4 governs service of the Petition here.

However, Respondent Liu has failed to address the service of process provision contained within the FAA.  Section 9 provides that "[i]f the adverse party is a resident of the district within which the award was made," service is to be accomplished by following the law for service of a motion in that district.  9 U.S.C. § 9.  Rule 5 governs service of motions in federal court.  On the other hand, "[i]f the adverse party [is] a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."  *Id.*

It is not clear how the service rules set forth in § 9 factor into this proceeding, where the Award was not made in any United States district and where Respondents claim to be nonresidents of the state but are nevertheless residing here.  In any event, because Respondent Liu does not argue he was subject to service by U.S. Marshal, the Court assumes without deciding that Petitioner was not required under 9 U.S.C. § 9 to serve Respondents in this manner.

[6] Rule 4(e)(1) authorizes service pursuant to state law, and California permits substituted service by, among other methods, leaving a summons and complaint with an adult at the party's usual residence or place of business with service by mail after.  Cal. Code Civ. P. § 415.20.

1    The Court can find no rule in *Burnham* that the exercise of personal jurisdiction

2    based upon physical presence only comports with due process if the nonresident

3    defendant is personally served.  Doc. No. 20 at 3.  True, in *Burnham*, the nonresident

4    defendant was personally served while present in the forum.  495 U.S. at 607.  But many

5    courts, including the Supreme Court, have not so limited the constitutional validity of

6    jurisdiction based on physical presence.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S.

7    873, 880 (2011) ("Presence within a State at the time suit commences through service of

8    process is another example" of a person submitting to personal jurisdiction); *see also*

9    *Ewing v. 8 Figure Dream Lifestyle, Ltd. Liab. Co.*, No. 18-CV-1063-AJB-AGS, 2019

10   U.S. Dist. LEXIS 54574, at \*22 (S.D. Cal. Mar. 29, 2019) ("General jurisdiction over an

11   individual is permissible only where he has been served with process while voluntarily in

12   the forum, is domiciled in the forum, or consents to the court's jurisdiction."); *Greystone*

13   *Hous. Found., Inc. v. Fantasy Holdings, Ltd. Liab. Co.*, No. 16-CV-0300-AJB-DHB,

14   2017 U.S. Dist. LEXIS 74683, at \*6 (S.D. Cal. May 16, 2017) (same); *Karalis v. Carn*,

15   No. 3:24-cv-01143-JSC, 2024 U.S. Dist. LEXIS 88871, at \*4 (N.D. Cal. May 16, 2024)

16   ("'A federal court obtains personal jurisdiction over a defendant if it is able to serve

17   process on him.'") (quoting *Butcher's Union Loc. No. 498, United Food & Com. Workers*

18   *v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)).

19   Moreover, as the Supreme Court in *Burnham* concluded: "The short of the matter

20   is that jurisdiction *based on physical presence alone* constitutes due process because it is

21   one of the continuing traditions of our legal system that define the due process standard

22   of 'traditional notions of fair play and substantial justice.'"  495 U.S. at 619 (emphasis

23   added).  For this reason, California's long-arm statute similarly recognizes the exercise of

24   personal jurisdiction based on presence.  Judicial Council comment to Cal. Code Civ. P.

25   § 410.10 ("All the recognized bases of judicial jurisdiction are included. In the case of

26   natural persons, such bases currently include presence, . . . .").

27   Respondent Liu lives in California.  He has continuously been physically present in

28   this district, voluntarily, for the last two years.  Gang Opp. Decl. ¶ 10.  Thus, he is subject

to service of process in this state and, if served accordingly, subject to this Court's personal jurisdiction. *Burnham*, 495 U.S. at 615 ("We do not know of a single state or federal statute, or a single judicial decision resting upon state law, that has abandoned in-state service as a basis of jurisdiction."); *cf. J. McIntyre*, 564 U.S. at 881 ("By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.").

Therefore, based on Respondent Liu's physical presence in the Southern District of California and the fact that he was properly served here, the Court is satisfied that it has personal jurisdiction over him. *See, e.g.*, *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 742 (N.D. Cal. 2015) ("As in *Burnham*, the fact that these [third party defendants] did not purposefully avail themselves of California's laws and protections does not necessarily mean they are protected from litigation here if tag or transient jurisdiction is established."); *Marino v. Nery's USA, Inc.*, No. 14-CV-497-BEN (JMA), 2015 U.S. Dist. LEXIS 181427, at *17 (S.D. Cal. Feb. 25, 2015) (finding that the defendant "was served in the state of California, which is sufficient to establish general personal jurisdiction"). Accordingly, the Court **DENIES** Respondent Liu's motion to the extent he seeks dismissal of the Petition for lack of personal jurisdiction.[7]

### 2. *The Doctrine of* Forum Non Conveniens

Next, Respondent Liu asserts that the Petition should be dismissed based on the doctrine of *forum non conveniens*. Doc. No. 12 at 15–18. "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947); *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

---

[7] Although Respondent Zhang does not dispute this Court's personal jurisdiction over her, the record similarly reflects that she is currently living in California and was served at the same residence in Rancho Santa Fe. Doc. No. 4. Consequently, for these same reasons, the Court finds that it has personal jurisdiction over Respondent Zhang.

As the Ninth Circuit has explained:

> The doctrine of *forum non conveniens* is a drastic exercise of the court's "inherent power" because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case. The harshness of such a dismissal is especially pronounced where, as here, the district court declines to place any conditions upon its dismissal. Therefore, we have treated *forum non conveniens* as "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting *Ravelo Monegro*, 211 F.3d at 514) (internal quotations omitted). The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal.

*Carijano*, 643 F.3d at 1224.

The party moving to dismiss based on *forum non conveniens* bears the burden of showing both that there is an adequate alternative forum, and that the balance of private and public interest factors favors dismissal. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). "The standard to be applied to a motion for dismissal on the ground of *forum non conveniens* is whether defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)) (cleaned up).

Respondent Liu argues that China is an adequate alternative forum. Doc. No. 12 at 16. According to Respondent Liu, he is a resident of China and Petitioner is a Chinese company, and both are subject to, or have submitted to, jurisdiction in China. *Id.* He also refers to pending litigation in China, initiated by the Target Company in 2024, between Petitioner, Respondent Liu, the Target Company, and Ningbo Zhenrong, which involves "the rights of Petitioner, Liu, Ningbo Zhenrong and the Target Company regarding Ningbo Zhenrong's remittance of the 120 million RMB to the Target Company." Doc. No. 12 at 13; *id.* at 17.

However, as Petitioner argues in opposition, *forum non conveniens* is not one of the enumerated grounds under Article V to refuse to confirm a foreign arbitration award.

Doc. No. 16 at 15–16.  This would appear to foreclose application of the doctrine in these circumstances.  But even assuming the doctrine of *forum non conveniens* applies to arbitration confirmation proceedings such as this one, the Court finds that Respondent Liu has not met his burden.

With respect to the private interest factors, *see Carijano*, 643 F.3d at 1229 (identifying the seven private interest factors), it is highly relevant that this is a summary proceeding.  The fact that China is the location where witnesses or evidence resides, and that the events precipitating the arbitration took place in China, carries very little if any weight.  To that end, there will be no trial or evidentiary hearing during these proceedings, so there will be no costs associated with bringing any remote witnesses to trial nor will there be any issues compelling their testimony.  Additionally, Respondent Liu is currently living in California, not China.  Liu Decl. ¶ 4.  Therefore, on balance, the private interest factors do not weigh in Respondent Liu's favor.

Turning to the public interest factors, *see Carijano*, 643 F.3d at 1232 (identifying the five public interest factors), the Court finds that the burden, congestion, and costs on the Court do not weigh in favor of dismissal because, again, this is a summary proceeding.  And while the local interest in the underlying dispute—a contract dispute between a Chinese citizen and Chinese company concerning a loan agreement executed in China—may be low, the United States is a party to the New York Convention and therefore has an interest in confirming enforceable foreign arbitration awards.  And these arbitration confirmation proceedings do not call on the Court to apply any foreign law.  Accordingly, the public interest factors similarly do not weigh in favor of dismissal.

Finally, Respondent Liu fails to identify any tangible burden, or facts establishing "oppression and vexation," by having to respond to this Petition here as opposed to in China.  For these reasons, the Court **DENIES** Respondent Liu's motion to dismiss based on the doctrine of *forum non conveniens*.  *See Zhejiang Meds. & Health Prods. Imp. & Exp. Co. v. Blue Cal. Co.*, No. CV 08-06327 RGK (FFMx), 2009 U.S. Dist. LEXIS 141024, at *10 (C.D. Cal. Apr. 23, 2009).

### *3.     Failure to Join Indispensable Parties*

Finally, Respondent Liu moves to dismiss the Petition on the grounds that Ningbo Zhenrong and the Target Company are indispensable parties that cannot be joined. Doc. No. 12 at 18–22. Federal Rule of Civil Procedure 19 governs the joinder of required parties. Courts analyzing Rule 19 employ a three-step analysis: (1) is the absent party necessary; (2) if so, is it feasible to join the absent party; and (3) if joinder is not feasible, can the action proceed without the absent party or "is the absent party indispensable," thereby requiring dismissal of the action. Fed. R. Civ. P. 19(a); *Salt River Project Agric. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012); *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999).

An absent party is "required" under Rule 19(a) if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>   (i) as a practical matter impair or impede the person's ability to protect the interest; or

>   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)–(B).

The failure and inability to join a required party is not an enumerated defense to confirmation under Article V, so Rule 19 appears inapplicable to this proceeding. *See Shanghai Lan*, 2019 U.S. Dist. LEXIS 217634, at *10–11 (confirming arbitration award over objection that indispensable party was not joined). But even assuming Rule 19 may be properly raised in defense to confirmation proceedings under the New York Convention, Respondent Liu does not explain how these parties are required under either Rule 19(a)(1)(A) or (b) except to say that they are necessary parties because "at the heart

of the parties' dispute" is whether "the transfer of 120 million RMB" was a loan from Ningbo Zhenrong to the Target Company or from Petitioner to Respondent Liu.  Doc. No. 12 at 19.

At the heart of this proceeding is whether the Court must confirm the Award or whether one of the seven grounds to refuse confirmation set forth in Article V are present.  In particular, whether: Respondent Liu was denied due process, Doc. No. 12 at 22–24; the Award was beyond the scope of the submission, *id.* at 24–26; or enforcement of the Award is contrary to public policy, *id.* at 26–29.  The underlying dispute that was submitted to and resolved by the BAC Tribunal is not at issue in this proceeding.  Moreover, neither Ningbo Zhenrong nor the Target Company were parties to the arbitration or named as responsible for the Award.  Accordingly, the Court finds that Ningbo Zhenrong and the Target Company are not required parties as defined by Rule 19(a)(1).  Because Respondent Liu has failed to demonstrate that they are necessary parties, the Court need not and does not reach the remainder of the Rule 19 analysis.  *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990) ("[N]o inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied.").  Consequently, the Court **DENIES** Respondent Liu's motion to dismiss the Petition.

**B.    Motion to Stay**

In the alternative, Respondent Liu asks the Court to stay this action pending resolution of litigation in China.  Doc. No. 12 at 29–30.  According to Respondent Liu, the Target Company initiated a lawsuit in China in 2024 against Petitioner, Liu, and Ningbo Zhenrong regarding "Ningbo Zhenrong's transfer of 120 million RMB to the Target Company . . . ."  Doc. No. 12 at 29.

As discussed above, the Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified" in the Convention.  9 U.S.C. § 207.  Respondent Liu does not identify any enumerated basis to defer these proceedings.  Instead, he briefs the factors for a *Landis* stay.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Assuming the Court has the inherent authority to stay arbitration confirmation proceedings pending other litigation, the Court finds that a stay is not warranted here.  In *Landis*, the Supreme Court recognized the general principle that "[a] district court has discretionary power to stay proceedings in its own court."  *Lockyer v. Mirant*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 254).  A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily controlling of the action before the court."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (identifying the *Landis* factors)).  The burden is on the movant to show that a stay is appropriate.  *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

Here, Petitioner concedes that a stay will not result in any harm.  Doc. No. 16 at 23.  But the Court is not satisfied that the pending litigation in China has any bearing on this proceeding or that Respondents face any hardship in the absence of a stay.  But for the general description that the Chinese lawsuit is "with respect to Ningbo Zhenrong's transfer of 120 million RMB to the Target Company is pending in China," Doc. No. 12 at 29, Respondent Liu provides no information as to what claims are before the Chinese court or matters are being litigated.  The Court assumes on this limited record that the Chinese litigation will revisit the issue of whether the loan from Ningbo Zhenrong was

made on behalf of Petitioner and pursuant to the Loan Agreement.  But as far as the Court is concerned, this dispute was already resolved by the BAC, and the only disputes before the Court in this proceeding are the defenses under Article V that Respondents put forth. Moreover, this is a summary proceeding that is fully briefed and there is nowhere forward for Respondents to go.  For these reasons as well, the orderly course of justice does not call for a stay and there is simply no risk of inconsistent judgments. Accordingly, the Court **DENIES** Respondent Liu's alternative request for a stay.

## C.    Petition to Confirm the Award

Turning to the Petition, SZIC asks the Court to confirm the Award and names both Liu and Zhang as Respondents.  However, as Respondent Zhang points out in opposition, she was neither a party to the Loan Agreement nor named as a respondent in the arbitration.  Doc. No. 9 at 2; Doc. No. 9-1 ("Zhang Decl.") ¶¶ 6–8, 10–15.  Rather, according to the Petition, Respondent Zhang is Respondent Liu's wife, and this appears to be the sole basis for naming her as a respondent on the Petition.  Pet. ¶ 5.[8]

The FAA is clear that for arbitration awards falling under the New York Convention, "any party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award *as against any other party to the arbitration*."  9 U.S.C. § 207 (emphasis added).  Respondent Zhang was not a party to the arbitration. Pet. Ex. D at 45 (identifying Petitioner as the Applicant and Respondent Liu as the only Respondent).  And she is not named on the Award.  *See generally* Pet. Ex. D.

Nevertheless, in support of its position that naming Respondent Zhang was proper, Petitioner explains that she is "listed as the Target Company's legal representative in the Loan Agreement and the Cooperation Agreement (Petition Exs. A-B), and she is a party to the Investment Agreement and Memorandum (Petition Ex. C.)."  Doc. No. 16 at 23.

---

[8] Respondent Zhang is mentioned once in the Petition, Pet. ¶ 5, and Petitioner expressly disclaims her involvement in the arbitration, *id.* at 2 fn.1.

Petitioner then explains that Respondent Zhang is jointly and severally liable on the Award and that she owns property and assets in California.  *Id.* at 23–24.

The fact that other courts have found Respondent Zhang jointly liable for the Award, or permitted enforcement against her, *see* Doc. No. 16 at 24, has no bearing on this summary proceeding through which the Court is merely tasked with determining whether one of the seven grounds to refuse confirmation of the Award are present.  The Court's authority to reduce the Award to a judgment here comes from Congress' grant of such power, 9 U.S.C. § 207, and Petitioner offers no legal authority for its position that the Court can confirm an arbitration award against a person who was not a party to the arbitration.  *C.f. United States ex rel. John A. Weber Co. v. Milcon Contr.*, 523 F. Supp. 3d 1203, 1211 (D. Haw. 2021) (declining to confirm an arbitration award against a surety who was not a party to the arbitration).  Accordingly, the Court finds that it was statutorily improper under the FAA for Petitioner to name Respondent Zhang as a respondent and the Court lacks the authority to confirm the Award as against her.  The Court therefore **DISMISSES** the Petition as it relates to Respondent Zhang.

Turning to the merits of the Petition, for the reasons set forth below, the Court finds that the Award falls under the New York Convention, and that Respondent Liu fails to meet his burden of demonstrating that the Award should not be confirmed.

First, the parties do not dispute, and the Court finds, that the Award falls under the New York Convention.  A foreign arbitration agreement or arbitral award "falls under" the New York Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial" unless such relationship that is entirely between United States citizens.  9 U.S.C. § 202.  "Courts generally address four factors to determine whether to enforce an arbitration agreement under the Convention."  *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009) (citations omitted).  These four factors examine whether the suit to enforce the foreign arbitration involves: (1) "an agreement in writing within the meaning of the Convention" that (2) "provides for arbitration in the territory of a signatory of the Convention" and (3) "arises out of a legal

relationship, whether contractual or not, which is considered commercial," as well as whether (4) "a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign state." *Balen*, 583 F.3d at 655 (quoting *Bautista*, 396 F.3d at 1294 n.7) (internal quotation marks omitted); *see also* 9 U.S.C. § 202.

The Loan Agreement, to which the Petitioner and Respondent Liu are signatories, is an agreement in writing within the meaning of the Convention. Pet. Ex. A. Second, the Loan Agreement calls for arbitration in Beijing according to the rules of the BAC. *Id.* at 20. Third, because the Loan Agreement provides that SZIC loan was to repurchase and release the VIE structure of the Target Company, the Court agrees that the instant action arises out of a legal commercial relationship between Petitioner and Respondent Liu. *See* 9 U.S.C. § 202 ("Commercial" "includ[es] a transaction, contract, or agreement described in section 2," namely "a contract evidencing a transaction involving commerce"). Finally, Petitioner is a Chinese corporation with its principal place of business in Shenzhen, Guangdon Province. Pet. ¶ 4; Pu Gang Decl. ¶ 1. Therefore, Petitioner is not an American citizen. Accordingly, the Court finds that the Award falls under the New York Convention and the Court therefore has jurisdiction over this matter pursuant to 9 U.S.C. § 203.

As a result, the Court must confirm the Award unless it finds one of the seven defenses applicable. The seven grounds for refusing to confirm an award are set out in Article V, which provides:

> (1) Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> > (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under

the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

(2) Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, Art. V.

These defenses are construed narrowly and the party opposing recognition or enforcement bears the burden of establishing that a defense applies. *See Polimaster*, 623 F.3d at 836. "The Convention and its implementing legislation have a pro-enforcement bias, a policy long-recognized by the Supreme Court." *Glencore Grain*, 284 F.3d at

1120.  Thus, the burden on the party seeking to avoid enforcement of an award "is
substantial."  *Polimaster*, 623 F.3d at 836 (internal citation omitted).

Respondent Liu presses three of the Article V defenses.  Doc. No. 12 at 22–31.

### 1.    Denial of Due Process – Article V(1)(b)

First, Respondent Liu contends that he was denied due process in violation of
Article V(1)(b) of the New York Convention.  Doc. No. 12 at 22–24.  Pursuant to Article
V(1)(b), a court may deny enforcement if "[t]he party against whom the award is invoked
was not given proper notice of the appointment of the arbitrator or of the arbitration
proceedings or was unable to otherwise present his case."  New York Convention, art. V,
§ 1(b).  This provision "essentially sanctions the application of . . . United States
standards of due process."  *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan
Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298 (5th Cir. 2004); *see also Lihua Song v.
Que*, No. 23-cv-02159-RFL, 2024 U.S. Dist. LEXIS 101438, at *3 (N.D. Cal. May 31,
2024).  Accordingly, an arbitration hearing must "meet[] the minimal requirements of
fairness—adequate notice, a hearing on the evidence, and an impartial decision by the
arbitrator," with the parties having had "an opportunity to be heard at a meaningful time
and in a meaningful manner."  *Karaha Bodas*, 364 F.3d at 299 (internal quotation marks
omitted).  However, "[t]he right to due process does not include the complete set of
procedural rights guaranteed by the Federal Rules of Civil Procedure."  *Id.*  (footnote
omitted).  "This provision does not authorize a court to refuse to recognize or enforce an
award unless it finds a denial of fundamental fairness in the arbitration proceedings."
*Bartlit Beck LLP v. Okada*, 25 F.4th 519, 523 (7th Cir. 2022).

Here, Respondent Liu asserts that he was denied the opportunity to confront and
cross-examine "crucial witnesses" in violation of his due process rights.  Doc. No. 12 at
24.  According to Respondent Liu:

> At the substantive heart of the issues in arbitration was whether the 120
> million RMB Ningbo Zhenrong transferred to the Target Company was a loan
> from Petitioner to Liu, as per the Loan Agreement and as argued by Petitioner,

or whether it was a convertible equity investment in the Target Company by
Ningbong Zhenron, as in the Investment Agreement, Memo and Letter of
Commitment and as argued by Liu.

*Id.* at 23.

Respondent Liu contends that at the arbitration hearing, Petitioner offered
"explanation notes"—"self-serving" notes submitted at the arbitration hearing
"purportedly authored by Ningbo Zhenrong"—in support of its position on this matter.
*Id.*  Respondent Liu contends he was not given the opportunity to cross-examine, for
example, the author of the "explanation notes." *Id.*

"[A] party does not have an absolute right to cross-examination." *Sunshine Mining*
*Co. v. United Steelworkers of Am., etc.*, 823 F.2d 1289, 1295 (9th Cir. 1987) (citing
*Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local*
*901*, 763 F.2d 34, 40 (1st Cir. 1985)).  "The arbitrator must, however, give each of the
parties to the dispute an adequate opportunity to present its evidence and arguments." *Id.*
Here, Respondent Liu summarily asserts that he was "denied the right to examine crucial
witnesses."  Doc. No. 12 at 24.  But he does not identify a single person by name that he
was unable to cross-examine—Respondent Liu only identifies unknown persons.  Doc.
No. 12 at 23 ("Liu did not get an opportunity to confront and cross-examine witness(es),
such as whoever authored the 'explanation' notes, and/or whoever had percipient
knowledge of any facts supporting them.").

More importantly, the record, namely, the transcript of the arbitration hearing,
reflects that Respondent Liu was not denied due process.  First, Respondent Liu was
represented by counsel, and he was given the opportunity to submit evidence and present
argument at the hearing.  *See generally* Doc. No. 12-5 at 14–26 ("Hrg. Tr.").  Further, all
parties agreed to the procedures, including the method and manner of cross-examination.
Hrg. Tr. at 14.  And specifically with respect to the "explanation notes," it appears from
the record that Respondent Liu raised concerns to the Tribunal and that an exchange
involving authenticity issues and "cross-examination opinion" took place.  Hrg. Tr. at

20–21 (discussing Exhibit 5).  Further, at the conclusion of the hearing, the parties were invited to submit written "cross-examination opinion."  Hrg. Tr. at 25.  At bottom, Respondent Liu fails to explain how these procedures were inadequate, how he was prejudiced by the absence of an ability to cross examine these unknown witnesses, or how the arbitration was fundamentally unfair as a result of his inability to conduct this cross-examination.

Respondent Liu's evidence does not change this outcome.  First, he offers hearsay evidence from Ding Zhexuan.  Even assuming the Court accepts this evidence under the residual exception to hearsay, Ding Zhexuan only suggests that there was some miscommunication four months after the hearing as to whether there would be a second hearing.  Ding Decl. ¶ 9.  His testimony does not undermine the sufficiency and fairness of the procedures Respondent Liu had already received at the hearing.

Respondent Liu also offers a declaration from James M. Zimmerman, an attorney with expert knowledge of and experience with Chinese arbitrations, including those under the BAC.  Zimmerman Decl. ¶¶ 1–3.  Mr. Zimmerman testifies to various BAC procedures that amount to, in his opinion, "systemic and institution conditions and limitations that impact the fairness and impartiality of the BAC dispute resolution process."  Zimmerman Decl. ¶ 6.  But there is no explanation of how these procedures as applied in this arbitration proceeding deprived Respondent Liu of his right to due process.  Mr. Zimmerman also discusses the procedures of selecting arbitrators and challenging arbitrator selections, specifically Petitioner's selection of Arbitrator Jingmin Zhai.  Zimmerman Decl. ¶¶ 8–9.  Mr. Zimmerman appears to question Arbitrator Zhai's impartiality.  *Id.*  But Respondent Liu does not argue that Arbitrator Zhai engaged in any misconduct or that Respondent Liu's due process rights were in any way affected by Arbitrator Zhai's presence on the Tribunal.  Further, Mr. Zimmerman calls into question Arbitrator Zhai's candor in his declaration statement, Zimmerman Decl. ¶ 9, but Respondent Liu does not argue that his due process rights were violated or affected by this declaration.

Accordingly, the Court finds that Article V(1)(b) does not provide a basis for the Court to deny confirmation of the Award.

### 2.      Beyond the Scope of Submission – Article V(1)(c)

Next, Respondent Liu argues that the Award was beyond the scope of the matter submitted to arbitration.  Doc. No. 12 at 24–26.  This defense, enumerated at Article V(1)(c), allows a court to refuse to confirm a foreign award if:

> The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced.

New York Convention, art. V, § 1(c).

According to Respondent Liu, the arbitration was initiated based on the Loan Agreement, which included an arbitration provision and to which Respondent Liu was a signatory.  Doc. No. 12 at 25.  Respondent Liu explains that the Loan Agreement did not govern the transfer of 120 million Yuan from Ningbo Zhenrong to the Target Company. *Id.*  Rather, Respondent Liu contends that this loan was made pursuant to the Investment Agreement, which does not include an arbitration clause and to which Respondent Liu is not a signatory.  *Id.*  Thus, "Petitioner had no right to initiate arbitration of events that occurred pursuant to the Investment Agreement. And, the Arbitration Tribunal had no jurisdiction to address matters related to the Investment Agreement."  Doc. No. 12 at 26.

The Court is not persuaded by this argument, which appears to rehash the merits of the parties' dispute that was submitted to arbitration and is beyond the scope of these proceedings.  The Loan Agreement's arbitration provision provides, in full:

> 4.2 Any dispute arising from the interpretation or performance of this Agreement shall first be settled through amicable negotiation. If negotiation

> failed, then any party shall have the right to file a lawsuit with the Beijing
> Arbitration Commission, and the dispute shall be settled through arbitration
> in Beijing in accordance with the rules of Beijing Arbitration Commission.

Pet. Ex. A at 20.

Accepting Respondent Liu's narrative, the underlying dispute involved, in part, whether Petitioner's performance (funding the loan) included Ningbo Zhenrong's loan of 120 million Yuan. Doc. No. 12 at 23. So the issue of whether the loan from Ningbo Zhenrong was made pursuant to the Loan Agreement or the Investment Agreement, as Petitioner contends, falls within the scope of the arbitration clause in the Loan Agreement and therefore the submission. Beyond this, Respondent Liu's argument on this defense is devoid of any reference to the Award and therefore he fails to demonstrate how any part of the Award is beyond the scope of the matter submitted. Accordingly, the Court finds that Article V(1)(c) of the New York Convention does not provide a valid basis for the Court to refuse to confirm the Award.

### 3.      Contrary to Public Policy – Article V(2)(b)

Finally, Respondent Liu argues that confirmation of the Award would be contrary to the public policy. Doc. No. 12 at 27. The Convention's public policy defense, Article V(2)(b), states:

> Recognition and enforcement of an arbitral award may . . . be refused if the
> competent authority in the country where recognition and enforcement is
> sought finds that . . . (b) The recognition or enforcement of the award would
> be contrary to the public policy of that country.

New York Convention, art. V, § 2(b).

"In recognition of a presumption favoring upholding international arbitration awards under the Convention, this defense is construed narrowly" and "applies only when confirmation or enforcement of a foreign arbitration award 'would violate the forum state's most basic notions of morality and justice." *Cubic Def.*, 665 F.3d at 1096–97 (internal citations and quotation marks omitted). "Although this defense is frequently

raised, it 'has rarely been successful.'" *Id.* at 1097 (quoting Andrew M. Campbell, Annotation, *Refusal to Enforce Foreign Arbitration Awards on Public Policy Grounds*, 144 A.L.R. Fed. 481 (1998 & supp.) (collecting cases)).

As an initial matter, Respondent Liu argues that the Award violates California's public policy.  Doc. No. 12 at 27–29.  But violation of the public policy of California, or any particular state, is technically not an enumerated defense.  The New York Convention's public policy defense states that in order for the Court to refuse to confirm an award, enforcement must be "contrary to the public policy of that country," here, the United States.  New York Convention, art. V, § 2.  Thus, to the extent Respondent Liu asks the Court to deny confirmation of the Award because confirmation would violate California's public policy, this is not an enumerated defense, and the Court therefore rejects this argument.

The Court nevertheless considers whether confirmation of the Award would violate public policy of the United States.  In support of this defense, Respondent Liu first reiterates that he was denied the right to cross-examine unknown witnesses, including the preparer of the "explanation notes" and witnesses with percipient knowledge of the facts contained therein.  Doc. No. 12 at 27.  As discussed above, the Court is not persuaded that Respondent Liu was denied due process in this respect.  Accordingly, for these same reasons, the Court finds that recognition of the Award does not contravene the United States' public policy.

Second, Respondent Liu argues that "there is evidence Petitioner acted unscrupulously sought to corrupt the process."  Doc. No. 12 at 29.  In support, he relies exclusively on the declaration of Ding Zhexuan, who states:

> 6. Petitioner approached me several times when the Arbitration was ongoing. In particular, around approximately August 2020 to October 2020, Mr. Yan Lianggang ("Mr. Yang"), a representative of Petitioner, approached me and offered me certain benefits as long as I was willing to help Petitioner during the Arbitration. I did not accept it.

7. The Arbitration panel consisted of three arbitrators. Liu could nominate one arbitrator. I recommend Arbitrator Zhan Hui ("Arbitrator Zhan") to Liu. Liu nominated Arbitrator Zhan, who became one of the three arbitrators.

8. During the Arbitration, Mr. Yang asked me to introduce Arbitrator Zhan to him. I refused.

Ding Decl. ¶¶ 6–8.

Further, Respondent Liu refers back to the Zimmerman Declaration. As discussed above, Mr. Zimmerman testifies to various BAC procedures, which he opines amount to "systemic and institution conditions and limitations that impact the fairness and impartiality of the BAC dispute resolution process." Zimmerman Decl. ¶ 6. Mr. Zimmerman also offers information on Arbitrator Zhai, the arbitrator Petitioner selected. Zimmerman Decl. ¶ 8. Mr. Zimmerman explains that it is his understanding that Arbitrator Zhai "once held several prominent positions in the High People's Court of Beijing" including "director of the Beijing Commission on Discipline and Inspection responsible for supervising Communist Party officials and activities within the court, which is a powerful political role." *Id.* According to Mr. Zimmerman, "[i]n these roles, Mr. Zhai had the ability to exert much influence over the arbitration process to the benefit of Petitioner and to the detriment of Respondent." *Id.* Respondent Liu concludes that "[i]n light of Petitioner's attempt to corrupt the arbitration proceedings and the susceptibility of arbitration in China to corruption, the Arbitration Award should not be confirmed. New York Convention, Art. V(2)(b)." Doc. No. 12 at 29.

Respondent Liu identifies no public policy. And his arguments are not specific as to why confirmation of this Award would violate any public policy of the United States. There was, by Respondent Liu's own evidence, no corruption. And to the extent Respondent Liu takes the position that all arbitrations before local arbitration institutions in China, such as the BAC, are corrupt, Doc. No. 12 at 27–28, the Court will not find on this record that *any* award issued by the BAC violates the United States' basic notions of morality and justice.

Consequently, the Court finds that confirmation of the Award is not contrary to public policy of the United States.

**D.   Award of Costs**

In its prayer for relief, Petitioner asks for costs incurred in bringing this action. Pet. at 17.  In his opposition and cross-motion, Respondent Liu argues that the Court should not award Petitioner costs because he raised colorable arguments in good faith. Doc. No. 12 at 30–31.

The question of whether a party defending against enforcement under the New York Convention raised colorable arguments in good faith bears on the matter of attorney's fees, not costs.  *Cubic Def.*, 665 F.3d at 1104 ("It is well settled, however, that even absent express statutory authority, federal courts have authority to award attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."); *see also BU8 Sdn. Bhd. v. CreAgri, Inc.*, No. C-14-4503-EMC, 2015 U.S. Dist. LEXIS 27950, at *31 (N.D. Cal. Mar. 6, 2015*); Sheet Metal Workers Int'l Asso. Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 747 (9th Cir. 1985). Here, Petitioner does not ask the Court for an award of attorney's fees.  So Respondent Liu's arguments are inapposite.  Moreover, Federal Rule of Civil Procedure 54 provides, in relevant part:

> (1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

Fed. R. Civ. P. 54(d)(1); *see also* CivLR 54.1.

Respondent Liu does not point to any statute, rule, or court order providing that Petitioner should not be entitled to recover its costs as the prevailing party in this proceeding.  But more importantly, the taxation of costs is a routine, ministerial function

of the Clerk's Office, and judgment has not yet been entered and Petitioner has not yet filed an application and bill of costs.  Accordingly, the Court declines to rule on any request by Respondent Liu to deny Petitioner costs at this time.

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Respondent Liu's cross-motion to dismiss or stay and **GRANTS** the Petition.  The Court **CONFIRMS** the Award and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED**.

Dated:  September 10, 2024

HON. MICHAEL M. ANELLO
United States District Judge